The Honorable Robert S. Lasnik

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

KEVIN DEWAYNE TAYLOR, JR.,

Plaintiff,

v.

CHRISTOPHER OSSEWAARDE and MARTIN KIRIGO,

Defendants.

NO. 24-cv-2173-RSL-BAT

**ORDER ADOPTING IN PART AND DECLINING TO ADOPT IN PART REPORT AND RECOMMENDATION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is the Report and Recommendation of the Honorable Brian A. Tsuchida, United States Magistrate Judge, recommending that defendants' motion for summary judgment be granted in part and denied in part. Dkt. 80. Plaintiff Kevin D. Taylor ("Taylor") and defendants Martin Kirigo and Christopher Ossewaarde

(collectively, "defendants") each filed objections to the Report and Recommendation. Dkts. 81, 83. Having reviewed the Report and Recommendation, the parties' respective objections, the record, and the relevant legal authority, the Court ADOPTS in part and DECLINES TO ADOPT in part the Report and Recommendation. The reasons for the Court's decision follow.

## BACKGROUND

Taylor initiated this § 1983 action in December 2024 while detained at the King County Regional Justice Center. After twice granting Taylor leave to amend, Judge Tsuchida screened Taylor's second amended complaint, Dkt. 10, and recommended dismissal of all claims except Count II, a Fourteenth Amendment procedural due process claim, and Count III, a First Amendment retaliation claim, against Ossewaarde and Kirigo. Dkt. 11. This Court adopted that recommendation on April 7, 2025. Dkt. 12.

Counts II and III arise from Taylor's placement in restrictive housing on September 18, 2024. Taylor alleges that he complained to Ossewaarde, a corrections program specialist ("CPS") with the King County Department of Adult and Juvenile Detention ("DAJD"), that other detainees were sexually harassing him, after which Ossewaarde told him he was being sent to the "hole" because he was "complaining." Taylor further alleges that Kirigo, a corrections officer with DAJD, transferred him to restrictive housing and

likewise told him he was being moved because he was complaining. Defendants dispute that account. Ossewaarde maintains that Taylor did not report sexual harassment during their September 18 meeting and that he placed Taylor in restrictive housing due to Taylor's aggressive and disruptive behavior, as well as his incompatibility with other detainees on the unit. Kirigo denies having any contact with Taylor that day and denies any role in inmate classification or housing decisions.

In March 2026, defendants moved for summary judgment on both claims. Dkt. 62. As to Count II, they argued that Taylor had no protected liberty interest in his housing classification and, alternatively, that he received constitutionally adequate process through administrative review of his placement. As to Count III, they argued that Taylor could not establish retaliation because jail records did not document a sexual-harassment complaint by him until October 25, 2024, after he had been placed in restrictive housing. Taylor filed an untimely response, which Judge Tsuchida nevertheless considered. Dkts. 77–78.

On April 27, 2026, Judge Tsuchida issued the Report and Recommendation now before the Court. Dkt. 80. Judge Tsuchida recommended granting summary judgment to both defendants on Count II, concluding that Taylor had not established a protected liberty interest in his placement in restrictive housing and had received an opportunity for administrative review. He further recommended denying summary judgment on Count III,

concluding that Taylor's sworn firsthand account created a genuine dispute of material fact as to whether he complained of sexual harassment before his placement and whether the placement was retaliatory.

Taylor objects to the recommended dismissal of Count II, maintaining that he was placed in restrictive housing as punishment without constitutionally adequate process. Dkt. 81. Defendants object to the recommendation on Count III. They argue that Taylor's account is contradicted by objective evidence and that Kirigo did not participate in the decision to place Taylor in restrictive housing. Dkt. 83. Defendants also argue, for the first time in their objections, that even if Taylor had complained of sexual harassment on September 18, his placement in restrictive housing served a legitimate correctional purpose because DAJD policy requires separation of alleged victims from alleged perpetrators. *Id*.

## LEGAL STANDARD

A district court has jurisdiction to review a magistrate judge's report and recommendation on dispositive matters. Fed. R. Civ. P. 72(b). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). "The district judge may accept, reject, or modify the recommended disposition." *Id*.

## DISCUSSION

### A. Count II

Count II alleges that Ossewaarde and Kirigo violated Taylor's Fourteenth Amendment procedural due process rights by placing him in restrictive housing as punishment without first providing constitutionally adequate process. Because Taylor was a pretrial detainee when he was placed in restrictive housing, the relevant question is whether his placement was punitive or instead reasonably related to a legitimate nonpunitive governmental objective. *See Bell v. Wolfish*, 441 U.S. 520, 537–39 (1979); *Demery v. Arpaio*, 378 F.3d 1020, 1028–30 (9th Cir. 2004). That distinction matters because a pretrial detainee may not be subjected to segregation as punishment without first receiving constitutionally adequate process. *See Mitchell v. Dupnik*, 75 F.3d 517, 523–25 (9th Cir. 1996) ("[P]retrial detainees may be subjected to disciplinary segregation only with a due process hearing to determine whether they have in fact violated any rule."). Thus, if Taylor's placement was punitive, defendants cannot avoid due process scrutiny merely because DAJD formally characterized the placement as administrative. *Id*.

The parties agree that Taylor met with Ossewaarde on September 18, 2024, and that Ossewaarde immediately thereafter placed him in restrictive housing. *See* Dkt. 64 at ¶ 13; Dkt. 67 at ¶ 12; Dkt. 77. They dispute why. Defendants maintain that the placement

was an administrative classification decision based on Taylor's aggressive behavior, incompatibility with other detainees, and disruption of the unit, and have produced contemporaneous evidence supporting that account. Dkt. 64 at ¶ 14; Dkt. 65, Ex. 10; Dkt. 67 at ¶ 12. Taylor, however, avers under penalty of perjury that Ossewaarde told him he was being sent to the "hole" because he was "complaining" and that Kirigo similarly told him he was being moved because he was complaining. Dkt. 77. If credited, Taylor's account of Ossewaarde's statement is direct evidence of punitive purpose, while his account of Kirigo's statement corroborates that explanation for the placement. Resolving the competing accounts would require the Court to weigh the evidence and make credibility determinations, which it may not do on summary judgment. *See Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005).

That factual dispute also defeats defendants' reliance on *Sandin v. Conner*, 515 U.S. 472 (1995), to argue that Taylor lacked a protected liberty interest because his placement did not impose an atypical and significant hardship in relation to ordinary jail life. Defendants' argument assumes that Taylor's placement was a nonpunitive administrative classification decision. Viewing the evidence in Taylor's favor, however, a reasonable jury could find that he was placed in restrictive housing as punishment. Whatever application *Sandin* may have to a nonpunitive administrative placement, it does

not eliminate the due process protections afforded a pretrial detainee subjected to segregation as punishment. *See Mitchell*, 75 F.3d at 523–24. Defendants do not contend that Taylor received the process required before punitive segregation may be imposed; instead, they rely on the administrative classification review conducted seven days after his placement. They therefore have not established as a matter of law that the process Taylor received was constitutionally sufficient.

Defendants also contend that Ossewaarde is entitled to qualified immunity because Taylor had no protected liberty interest in his classification status and therefore suffered no constitutional violation. That argument likewise depends on defendants' characterization of Taylor's placement as an administrative classification decision. As explained above, however, a reasonable jury could find that Ossewaarde placed Taylor in restrictive housing as punishment. It was clearly established well before September 2024 that a pretrial detainee could not be subjected to segregation as punishment without due process. *Mitchell*, 75 F.3d at 523–24. Because Ossewaarde's entitlement to qualified immunity turns on the same disputed factual question, he is not entitled to qualified immunity at summary judgment.

The result is different as to Kirigo. Taylor avers that Kirigo physically transferred him to restrictive housing and told him he was being moved because he was

"complaining." Although defendants dispute that Kirigo had any contact with Taylor that day, the Court must credit Taylor's account at this stage. Taylor, however, identifies no evidence contradicting Kirigo's testimony that, as a corrections officer, he had no authority over inmate classification or housing decisions and merely escorted inmates to placements selected by CPS staff. Dkt. 66 ¶¶ 3–4. Section 1983 requires a causal connection between each defendant's conduct and the alleged constitutional deprivation. *See Peck v. Montoya*, 51 F.4th 877, 889–91 (9th Cir. 2022); *DeOllas v. County of Sacramento*, 2022 WL 17833273, at *2 (E.D. Cal. Dec. 21, 2022). Although Kirigo's alleged statement may corroborate Taylor's account of why Ossewaarde ordered the placement, it does not establish that Kirigo participated in that decision, determined what process Taylor would receive, denied him a hearing, or otherwise caused the alleged due process violation. Nor does the record support a reasonable inference that Kirigo knowingly participated in a common plan to deprive Taylor of constitutionally required process. Defendants are therefore entitled to summary judgment on Count II as to Kirigo.

**B. Count III**

In Count III, Taylor alleges that defendants retaliated against him for complaining of sexual harassment by placing him in restrictive housing. Relying on the competing accounts of the September 18 meeting discussed above, the Report and Recommendation

concluded that a genuine dispute of material fact existed as to whether Taylor complained of sexual harassment before his placement and whether the placement was motivated by that complaint. Dkt. 80 at 10–12. Because Taylor's account was based on personal knowledge and made under penalty of perjury, the Report and Recommendation concluded that it could not be disregarded merely because it was uncorroborated and self-serving and recommended denying summary judgment on Count III as to both defendants. *Id.* at 12–13.

Defendants object on three grounds. First, they contend that Taylor's account does not create a genuine dispute because it is contradicted by objective evidence, including the absence of a contemporaneous PREA entry and records reflecting that Taylor did not submit a documented sexual-harassment grievance until October 25, 2024. Dkt. 83 at 2–3. Second, they argue that Count III should be dismissed as to Kirigo because he did not participate in the decision to place Taylor in restrictive housing. *Id*. Third, defendants raise a new argument based on DAJD's PREA policies.

The Court agrees with the Report and Recommendation that defendants' first argument does not warrant summary judgment as to Ossewaarde. As discussed above, Taylor and Ossewaarde offer materially different accounts of the September 18 meeting and the reason for Taylor's subsequent placement in restrictive housing. Defendants'

documentary evidence lends support to Ossewaarde's account, but it does not eliminate the factual dispute created by Taylor's sworn firsthand testimony. Resolving that dispute would require the Court to weigh the evidence and assess credibility, which it may not do on summary judgment. *See Nigro v. Sears, Roebuck and Co*., 784 F.3d 495, 497–98 (9th Cir. 2015). Defendants' objection on this ground is therefore overruled.

The Court agrees, however, that Kirigo is entitled to summary judgment on Count III. As explained above, even crediting Taylor's account of Kirigo's involvement, the record does not support a reasonable inference that Kirigo made or participated in the decision to place Taylor in restrictive housing. Because the placement itself is the adverse action underlying Count III, the same absence of evidence that Kirigo participated in the placement decision defeats Taylor's retaliation claim against him. Defendants' objection is therefore sustained as to Kirigo.

Defendants' remaining objection relies on DAJD's PREA policies. For the first time in their objections, defendants argue that, even assuming that Taylor had complained of sexual harassment on September 18, his placement in restrictive housing reasonably advanced a legitimate correctional goal because DAJD policies required that alleged victims be separated from alleged perpetrators. Dkt. 83. Defendants also submitted a new declaration and PREA policies in support of that argument. This theory was not presented

to the magistrate judge. A district court has discretion to decline to consider evidence first presented with objections to a magistrate judge's recommendation. *United States v. Howell*, 231 F.3d 615, 621–22 (9th Cir. 2000). Defendants identify no reason the PREA-separation theory or the evidence supporting it could not have been presented with their motion for summary judgment. The Court therefore exercises its discretion not to consider the new theory and accompanying evidence.

Even if the Court were to consider the argument, however, it would not establish defendants' entitlement to summary judgment. The Ninth Circuit has cautioned that prison officials may not defeat a retaliation claim merely by identifying a legitimate correctional purpose generally served by their actions where a genuine factual dispute exists as to whether the asserted justification was used "as a cover or a ruse" for retaliation. *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003). As discussed above, Taylor's testimony creates a genuine dispute as to whether Ossewaarde placed him in restrictive housing in retaliation for complaining.

Nor do the policies on which defendants rely establish that Taylor's placement in restrictive housing was required by or consistent with PREA-related safety concerns. Although DAJD's PREA policies require staff to separate an alleged victim from an alleged perpetrator, they do not require that the alleged victim be placed in restrictive

housing. To the contrary, the policies provide that an inmate at high risk for sexual victimization shall not be placed in involuntary restrictive housing unless all available alternatives have been assessed and officials determine that no alternative means of separation is available. Dkt. 84-2, 6.04.001 PREA at 5–6. If that assessment cannot be completed immediately, the inmate may be held in restrictive housing for less than 24 hours while the assessment is conducted. *Id*. DAJD's restrictive-housing policy similarly provides that such an inmate may not remain in restrictive housing beyond 24 hours absent the required assessment and further provide that restrictive housing may continue only until an alternative means of separation can be arranged and may not exceed 30 days. Dkt. 69-1, 6.03.001 Restrictive Housing-Page 5(b)2.b.

The record does not establish that officials assessed the available alternatives or determined that no other means of separating Taylor from the alleged harassers was available. Moreover, Taylor remained in restrictive housing for more than 30 days. Thus, defendants' own policies establish a legitimate correctional interest in separating alleged victims from alleged perpetrators, but they do not establish that Taylor's placement in restrictive housing, much less his continued placement there, reasonably advanced that interest as a matter of law. Accordingly, even if considered, defendants' PREA argument does not warrant summary judgment.

**CONCLUSION**

For the foregoing reasons, the Court ADOPTS in part and DECLINES TO ADOPT in part the Report and Recommendation, Dkt. 80. Defendants' motion for summary judgment, Dkt. 62, is GRANTED as to all claims against Kirigo and DENIED as to Counts II and III against Ossewaarde.

DATED this 8th day of September 2026.

Robert S. Lasnik
United States District Judge